Thank you. Good morning. Good morning. Welcome to our second zoom court call. We're happy to have you with us this morning. Mr. Gottfried, are you ready? Yes, ma'am. You may proceed. Thank you, Your Honor. The crux of the case involves a written agreement between Cynthia Harksen, the defendant, or the petitioner, respondent rather, and Peggy Schroeder, the deceased mother of the petitioner, in which a written agreement was set forth in text messages between them that governed how Peggy Schroeder wanted her pension fund distributed to her two daughters, one of which is our client, and the other is Anna Schroeder. Just the background, Anna Schroeder ultimately had been murdered, her mother, and so she was then prevented from any recovery on this. But regardless, so it is the written agreement by text messages that there was the insurance fund to be paid to the two daughters. However, before... Let me ask you a question. Well, two things. First of all, we're here not necessarily to discuss the merits of your claim. The question is whether you can proceed with this claim, in other words, and resolve any factual matters. We're here on a dismissal with prejudice, isn't that right? Yes, and it pertains to the third amended complaint that we filed, which we believe actually sets forth the agreement between Peggy Schroeder and her niece, Cynthia Harksen, and the violation of that agreement in that Cynthia Harksen failed to do what Peggy Schroeder and she had agreed to in the text messages. Well, two things. Just out of curiosity, I don't know, did Peggy die and test it? I believe that's correct. Okay, I'm sorry. Go ahead and proceed. That's fine. So what we attempted to do is to prevent Cynthia Harksen from spending all of the money that was supposed to go to Peggy Schroeder's two daughters. She failed to stop, and so we filed this action and had to get to a third amended petition, and then that got denied by the court, and we believe there is a valid basis for it in there. Well, let me ask you this. Did the court dismiss the complaint, the third amended complaint or whichever last one, for failure to attach, A, attach a written, the agreement, or B, explain why you couldn't? Sure, yes. That issue also involved the other daughter who had killed her mother in that there was a protective order preventing the disclosure of any of the text messages to anyone because they had a murder case going on, and they couldn't have that open to the attorneys from providing that information in a public manner, which then prevented me from providing that information. How did that prevent you, Mr. Godfrey? Because we are under order by that case not to publish this information to anyone. It's a thing called under seal. Did you proceed on that direction, in that direction? The matter was under seal, and so that's where the order came out of that we were not allowed to publish this to anyone publicly, and so that prevented me from publishing these emails. Did you reference that under seal to the court in your complaint? It was referenced to the court. The court was fully aware of it, and it was part of our pleadings in the third amendment petition that that was what was holding us back from that, and if the court wanted us to go behind or beyond that, then I suggested I would do that, but only with the court's blessing and an order and so I was prepared to do that. I had sent in the proposed amended petition with the text messages, and well, that was to be done. That showed that there was a specific agreement between the Cynthia Harkson and Peggy Schroeder, the deceased mother, in which our clients would cover for. So what was under seal? Any conversations from Peggy Schroeder, the mother, any information that the state apparently wanted to keep under protection. So are you telling me you actually did disclose it in your complaint? We did not disclose it until the third amended petition in which we referenced that we had these, we wanted to disclose them, but the order of the court in the criminal case prevented us from doing that. But if the court wanted us to do so, that we would, we would. So what did you attach to the pleadings under 2606 says you have to attach something to the pleadings, clearly says the written instrument or copy thereof or so much of the same as is relevant must be attached as an criminal case. We couldn't attach anything until that got cleared up and the court at the end. So what motions did you file for the court to try to rectify the situation? There weren't any motions filed with the criminal court. We did. The criminal court had established that and we were bound by that order as well. So is this the same court that the probate was being a proceeding? It's my recollection that that was the same judge, but I'm not certain on that, but it's in the same County. Oh yeah, that's right. It's in white side County, right? Correct. Yes. So Mr. Godfrey, even though you did not attach those documents, you did submit them to the court, did you submit documents that absent the protective order you would have submitted, you would have attached? I believe I did or provided that to the court. So the court was in possession of the documents that you would like to attach. Yes. The trial judge had those before her showing what the evidence was. And we just wanted to make sure we weren't violating the criminal court order on us and, you know, be sanctioned for disclosing that. But the judge in this case was well aware of the faxes or the text messages rather. Let me ask you, has the criminal prosecution concluded? It has at this point. Is the protective order then moot? Well, yeah. Oh, sorry. I apologize. Yes, it would be moot at this point. But that's been before this got to the stage it has, the matter was still ongoing. And so we were still prevented at that point. I understand, but now it's moot. It is. Okay. Thank you. And so one of the arguments I make about this is that the court wanted us to plead the ultimate evidence in these form of these text messages, rather than just going with my third amendment complaint, which set forth what these were and what they would say. So it's in pleading these types of actions, we don't plead evidence, we plead, you know, all the facts that we believe can be presented to establish a cause of action. Hold on. In respect to contract cases, while you plead facts, you also attach a copy of the contract, right? Well, you can. This is not a typical case, I guess. Just because of the nature of how the messages were set up and the contract was set up. But I think what I was required to plead were sufficient facts showing that there was an all of the minute details of the specific thing. Just because that would be pleading evidence, I saw. And, you know, only the ultimate facts should be pled. And in this case, I pled forth sufficient information that they, the other side, knew exactly what we were talking about. And, in fact, they had the same text messages themselves. So there was no surprise or anything to them. And so at the end, the court stated that since we didn't plead those, that she was dismissing the cause of action, you know, I could have easily pled another complaint had she allowed to, you know, publish those text messages or emails. But she just struck the case and dismissed it. Why were you not timely in filing this? Yeah, part of the problem with this was the fact that the client that we had was not very consistent in getting back to us. And she delayed the matter on but I think what's important, even though she did delay it, there was no prejudice whatsoever to the other party. They didn't suffer any prejudice whatsoever because of my client's delays. And I laid those out in the various pleadings for delays. So although she did delay this and cause problems for us, ultimately, Ms. Harkson, the one who's been spending all the mother's money. Well, we're talking about what, a 401k? What time of account was it? Yeah, it was a pension that she had and there was a roughly $177,000. It was clearly the beneficiary was opposing counsel's client, correct? That's correct. So upon death, that account was her property as a matter of law, am I correct? Except for the fact that she and Cynthia Harkson had established an agreement that was in writing. Well, that is your claim. Okay. No, I mean, the text messages are in the... That's your claim. That's your claim. Correct. Yes. Talking about prejudice, sir. Not being able to spend money might be prejudicial because of a lawsuit, right? Or did you get an injunction? Yeah, there was no injunction granted by the court. Well, I don't care whether it's granted, was there one asked for it? The court only does what they ask for. Well, it looks like your time is up, Mr. Gottfried. So you can maybe answer that in your reply. Is he answering your question? No. Is there a question pending? There was, but forget it. No. So Mr. Gottfried, your time is up. You will have time for rebuttal. Mr. Cole? Yes, Your Honor. Good morning. Good morning. You may proceed. Thanks, Your Honor. Good morning, Your Honor. My name is Matt Cole. I represent the respondent Cynthia Harkson. As kind of what's been alluded to by opposing counsel, I think there's generally two issues that are before the court today. One being whether the circuit court erred when it denied the appellant's motion for leave to file a third amended petition. And second, whether or not she erred when the motion for reconsideration was also denied. So I believe there's two issues that would be properly set forth before the court. The facts of this appeal are relatively straightforward, Your Honor. I know they've already been gone into in depth, so I'm not going to cover that. Plainly speaking, what Ms. Schroeder is suggesting is that the denial of her motion for leave was an abuse of discretion, meaning that no reasonable person would agree with the view with the facts that were laid before the circuit court when she ruled on the motion for leave. As alluded to in our brief, Your Honor, our state Supreme Court in the Loyola Academy case has set forth a four-factor test in order to determine whether or not a motion for leave to file an amended petition should be granted. I think it's worth noting that all four of these to be proper. Very simply, Your Honor, the four factors that are considered, one, whether the proposed amendment would cure the defective pleading, two, whether the non-moving party would suffer any prejudice, three, whether there were previous opportunities to amend, and four, whether the amendment is timely. Now, as opposing counsels alluded to, the second amended petition was filed and it was dismissed pursuant to Section 2606 of the Code of Civil Procedure, meaning essentially that there was no writing attached to the agreement and no sufficient affidavit attached to the agreement, which would set forth with particularity the facts showing why this written agreement doesn't exist. The third amended petition, which was requested by appellant's motion for leave, is an exact replica of the second petition that was dismissed. The only difference between the two is the exclusion of, I believe, three paragraphs, meaning that there's less facts pleaded in. The proposed amended petition, which is intended to cure the defects, meaning that no written agreement was attached and no affidavit was provided to the court, it simply can't be said that this petition, this third amended petition, would operate to cure those defects. Again, with the same set of facts that the court had already previously dismissed, the only thing that would occur if the motion was granted would be followed up immediately by another motion to dismiss and then a fourth request for a fourth amended petition to be filed. That simply does not align with the court's reasoning in Loyola Academy. I think it can clearly be said that, you know, an exact replica of the same complaint that was already dismissed, with no real attempt to cure any of those deficiencies, which the appellant was very well aware of, having already filed two previous pleadings that were both dismissed in terms of not complying with section 2606, I think it's clear that there would be no sense of justice in continuing this case and granting another motion for leave. Well, let me ask you a couple questions. First of all, everybody seemed to be aware that the agreement that the plaintiff was trying to talk about was contained in these text messages. Is that fair? Yes, Your Honor. And you knew it and the court know? From the pleadings, yes, Your Honor. Again, the point being we need to see the agreement if it exists at all. You know, it goes without saying, Your Honor, certainly there were text messages that were exchanged between our client and Ms. Schroeder, or I'm sorry, Peggy Schroeder, prior to her death. But the substance of those text messages, you know, we have no idea what that written agreement may be unless it's actually attached to the complaint setting forth whatever this agreement was. Well, let me ask you another question. Let's suppose, because opposing counsel seems to clearly intimate here, no doubt in my mind that what he's saying is, is the written agreement is those text messages. So my question to you is, assuming that he had attached the text messages, would that, would those text messages cure the defect or would they, in other words, is there an up there to, or is that even an issue for us here today? The judge didn't seem to talk about that. Well, Your Honor, I really, I think you're right when you, when you mentioned, I don't think that's properly the issue before the court today. Clearly, I think at a minimum, if the third amended petition were to attempt to cure the defects that were existing from the you know, the inference here is that these agreements exist within text messages exchanged between our client and Peggy Schroeder prior to her death. But that didn't happen. Let me ask you a further question. Under 2606 of the code, it says in effect, you must attach the writing that's in those must be attached to the pleadings as an exhibit, okay, or recited therein. Or you can attach an affidavit stating fact showing the instrument is not accessible to him or her. Is that correct? That's correct, Your Honor. And this pleading that was dismissed had neither? It had neither. Now, the second amended petition did have an affidavit from Ms. Schroeder, although the affidavit, I believe was struck because it wasn't based on her personal knowledge. The third amended petition, which I believe is the focus here, Your Honors, didn't include either one of those. It didn't include any written agreement attached as an exhibit or an affidavit from Ms. Schroeder. Let me ask you another one. At the time that this was dismissed with prejudice, or at least at the, I guess we're talking the complaint that was dismissed with prejudice was the second amended complaint. Am I right? Yes, Your Honor. Okay. Now, at that time that that was filed, was the criminal prosecution still ongoing? Yes, it was still pending. All right. So it certainly seems here what makes this case different from the others, you've got opposing counsel who's obviously concerned about getting himself cited for contempt of court and conceivably thrown in jail for violating that order. And does that make it a little different here? Your Honor, I don't think it does. And the reason being, the issues regarding the protective order, which I know has been alluded to often by opposing counsel was never raised at all at any point during the attempted motion for leave to amend for a third amended petition. So not only was the protective order and the substance of that addressed in their motion, it wasn't addressed after our written objection to the motion. It wasn't addressed at oral arguments in front of the circuit court. The only time that the protective order was raised was on their motion for reconsideration. So again, if you're looking at the facts that were before the circuit court, clearly if there was no written agreement attached and there was no affidavit setting forth the facts as to why the written agreement wasn't available to them, then that would certainly justify why the motion was denied. Again, the affidavit could come from not a party necessarily, but could come from anyone. Is that correct? Your Honor, I believe really it could come from anyone, but at this point there was no affidavit filed, period. Meaning that no one with personal knowledge of this agreement is around. In part, that becomes even more difficult with Peggy Schroeder having been deceased during the pendency of this matter. Well, couldn't an affidavit be given by the party stating the under seal facts that the instrument would not be available to him or her? That could have been addressed. Again, the issue is it never was when it was before the court. I'm saying that there is a relief valve. Is there not even for a protective order in section 2606? Yes. So not within 2606 itself, Your Honor. What I would say is, you know, certainly there could have been discussions with the court about submitting whatever agreement it was under seal. 2606 still requires the agreement to be attached, but it doesn't specify whether it needs to be made publicly available or whether that can be done under seal with the potential of this protective order being out there. Again though, on the motion... You don't have to. If you read 2606 carefully, you don't have to attach the you must have in that affidavit. Yes, that's correct, Your Honor. Okay, so I'm saying that's your relief valve if something's under seal. An affidavit attached to the pleadings. It's right there. Yes. Okay. Now, one more question, Mr. Cole. Maybe not one more, but at least one more right now. Any delay caused here prejudiced your client just now? Your Honor, the delay isn't what caused the prejudice here. The issue is that our client would be prejudiced by continually having to defend a case in which the proposed pleading is clearly going to be dismissed the next time it's around. Again, the third amended petition here is an exact copy of what was dismissed before. It still doesn't include the written agreement. The protective order wasn't even alleged at the time that the motion was requested. And not only that, Your Honor, it's clear. And again, going back to the reasoning from the Loyola court is that prejudice isn't the only factor here, right? When the circuit court is deciding whether or not to allow a motion for leave to amend a pleading, you also have to show that it has to plausibly cure the defects that were in the previous pleading. We know that's not the case. So again, to allege that there's no prejudice existing here, I think just isn't the case. Because again, if this were to go forward and the motion for leave to submit a third amended petition were granted, it again be followed up by another motion to dismiss. Plausibly, it would be dismissed because it's an exact copy of what was already dismissed by the circuit court. And we'd be here again on a fourth request for an amended petition. So again, the costs associated with defending these types of actions, I believe certainly would prejudice our client. Well, in the nature of a trust, let's assuming that they attached all this stuff, in the nature of the trust, at least there'd be a reasonable argument that your client would be exempt from those financial instruments, wouldn't she? Sure, Your Honor, but understand as a matter of law, she was the named beneficiary. And again, we've now defended three separate pleadings and now defending a fourth year on appeal over what at this time is her right to those proceeds. Again, I don't think the expectation when she was given these funds from Peggy Schroeder upon her death, that she would spend the majority of it defending and fighting in court over whether or not this was actually her money. I'll grant you this question is totally irrelevant, but I got an inquiring mind. The Peggy's estate outside of these other documents we're talking about, these financial instruments would have passed outside of her estate. They were POD, that's payable on death for the millions of people that are listening to this. But so outside of that in her estate, what'd she have? Your Honor, I'm not aware of the other assets that she had. Okay. I wasn't involved in that. Fair enough. An irrelevant question. Your Honors, I do see I'm out of time. You're out of time, Mr. Cole. I have a question. I think I can extend your time long enough to answer my question. Do you agree that the text messages were before the court, that they had been given to the court? I don't believe the text messages were before the court, Your Honor. They had not been submitted by Mr. Godson to the court? No. And again, the expectation would be that those would be attached to the pleadings. Again, even if the protective order were to cause an issue, it certainly could have been requested to be submitted under seal, but those were not before the court. Okay. Thank you. Mr. Godfrey, any rebuttal? Yes. Thank you, Your Honor. Just a couple of, I think, key points. Number one, there has been no prejudice to Cynthia Harkson as a result of the ongoing delay. Nothing has stopped her from spending all of Peggy Schroeder's money. I'm not saying she has, but I'm saying nothing is stopping her from that. She can't claim any kind of prejudice in this. She was well aware of the text message agreement because it was between her and Peggy Schroeder. She knew that this was what Peggy wanted, and she violated that agreement by keeping the money for herself. I believe the third amendment... Wait a minute. Did your client, assuming this agreement is valid, did your client establish and plead that she was drug free for a year because that was part of the agreement, right? Yeah. I don't recall that fact. I believe that to be true, but I don't recall if the pleadings and filings contain that information. And secondly, what evidence do you have that without a constructive trust, that Ms. Harkson would spend all this money on herself? The only thing we have are the text messages between Peggy Schroeder and Cynthia Harkson stating that fact that she was supposed to hold that for the daughters. Well, so my question is, what did you plead that she's not doing that? That this requires a constructive trust issued by the court? Yeah, I don't know why the court wouldn't grant that. I pled that factually that that is what was happening and had happened factually. I didn't feel I was allowed to plead the protected information protected by the criminal court case in the civil court case, but I pled factually what the basis of the contract was, the agreement between them, and that is sufficient under Illinois law to plead. Wait a minute, what's the breach? How did Ms. Harkson breach the contract? Because the contract was that the monies were to be used for the daughters of Peggy Schroeder, and instead Cynthia Harkson took the money and spent it on herself. How so? Well, I'm aware of vacations she's taken. I'm aware of other purchases she's made that have come out from my clients' information. So, I mean, the money is being spent. There's no question about that. The council doesn't deny that either. Well, they're not yet at the stage to admit or deny anything. They got to get a good complaint on file first. Okay. All right. Thank you. Yes. Mr. Gottfried, you said, Mr. Gottfried, you said that you had submitted those text messages to the court, and Mr. Cole says that you had not. Were they submitted, or were they not? I guess I'm looking at the third amended petition. It talks about the fund and a written agreement that, so I set forth the basis of the agreement in that, I think because... That's not the question. My question is, the text messages that you received in discovery, did you turn those into the court as the documents that you wanted to be able to use to substantiate your complaint? Yeah. The court order in the criminal case prohibited me from publishing those text messages to anyone. And so that included this case. So, no, those were not specifically included in there. They were referenced, but as far as an agreement had occurred with these written text messages, but it was, I could not publish those to the court or present those to the court. Is that correct? That would be correct. Yeah. Otherwise I might be sitting in jail. So, they're not in the briefs or anywhere now, right? Well, they can't be, no, because that would be publishing. Okay. Okay. So, now that the criminal case is done though, now I would have the right to publish them and put that information before the court. So, they have a good chance now to look at it and make a decision on it. But it's been up to that point, the third amount of complaint, I couldn't do that, but now I can, this would give me that relief to do so and establish a valid cause of action and establish a good chance of recovering damages against Cynthia Harkson. She's not been prejudiced in any way because of these delays, none. So, this would clear up the whole conflict. Now, if I can do that and I'm asking the court for one last chance to do that, if you so please. But I think we've established that there was a contractual arrangement between them and that I was prevented from establishing that in the record. And so- Mr. Gottfried, your time is up. All right, very much. Okay. We thank you both for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision. The court will stand in brief recess for a panel change. Thank you.